No: 15 - 56996

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| THOMAS NGUYEN | ) | Case Appeal No: 15-56996 |
| Plaintiff-Appellant Pro Se, | ) | |
| v. | ) | US District Case No: |
| SAN DIEGO POLICE DEPARTMENT, et al. | ) | 3:11-cv-2594-WQH-MDD |
| Defendants-Respondents, | ) | |

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

## APPELLANT'S REPLY BRIEF

MAY 1 6 2016

FILED_____
DOCKETED_____
                        DATE        INITIAL

Appeal from the Final Judgment of
the US District Court for Southern California
dated December 21, 2015
The Honorable William Q. Hayes

Thomas Nguyen
7807 Jade Coast Road
San Diego, CA 92126
Telephone: (619) 808-4153
E-mail address: nguyentn10@hot.com
Website: http://www.3jcn.com
Plaintiff-Appellant, Pro Se

# TABLE OF CONTENT

TABLE OF CONTENTS..................................................................page 2
STATEMENT OF ISSUES PRESENTED FOR REVIEW...........................2
STATEMENT OF THE CASE.....................................................................3
ARGUMENT...............................................................................................5
CONCLUSION.........................................................................................13
SIGNATURE............................................................................................13
LIST OF AUTHORITIES.........................................................................14
CERTIFICATE OF COMPLIANCE.........................................................14
LIST OF EXHIBITS................................................................................14
CERTIFICATE OF SERVICE.................................................................14

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

What facts or issues do you think the US District Court of Southern California judge decided incorrectly? Questions Presented on Appeal:

I.   Whether the Defendants are entitled to qualified immunity under that version of the facts?

II.  Whether no Constitutional rights were violated?

    a. Did San Diego Police have any probable causes to arrest me while I had proved that all its evidences were fabricated in Part I of Informal Brief?

    a. Whether or not San Diego police violated my Freedom of Speech, First Amendment rights?

    b. Whether or not San Diego police violated my Fourth Amendment rights (Excessive Force and Detention without Probable Cause)?

    c. Whether or not San Diego police violated Defamation?

    d. Whether or not San Diego police violated State Law Intentional False Arrest?

    e. Whether or not San Diego police violated False Imprisonment?

    f. Whether or not San Diego police violated Intentional Fabrication of Evidence resulting in a loss of Liberty?

    g. Whether or not San Diego police violated Excessive Force and Police Brutality?

    h. Whether or not San Diego police violated Negligence and Battery?

i. Why San Diego Police Department, Sergeant Jesus Cesena, Clinician Kathryn Alban, police Officer Michael Moran are not in the Defendant List?

# STATEMENT OF THE CASE

## Statement of facts

On December 30, 2010, Plaintiff Thomas Nguyen attended the Holiday Bowl Parade in San Diego, California (Appellees' Exc. Rec. p 1 & 123 (AER)) This Parade is a public event held annually and runs along public streets near the San Diego Harbor. On the morning of December 30, 2010, Plaintiff ate breakfast and walked to the Parade route. Plaintiff carried with him a sign. This sign was made of two poster-boards taped around a thin (non-pointed) wooden stick. Plaintiff had purchased the wooden stick at Home Depot Mira Mesa, San Diego. Plaintiff's purpose in attending the parade was to highlight and express his beliefs about Central Intelligence Agency (CIA). Plaintiff had written on his sign his belief about the CIA. At approximately 9:00am, at the parade, San Diego Police Sergeant Jesus Cesena – security supervisor at the Parade – approached Plaintiff and grabbed Plaintiff's arm. Cesena squeezed Plaintiff's arm and said to Plaintiff, "I dare you to mess up the parade." Plaintiff said, "You hurt me." Jesus Cesena released Plaintiff and walked away (AER p 37 & 124.) Once the Parade had begun, Plaintiff walked toward the Live Television Broadcast Cox channel 4. Plaintiff yelled words along the lines of: "CIA is demon," "CIA is evil," "CIA destroyed my life," "CIA is stupid. CIA trained Bin Laden." Plaintiff did so to express his belief about the CIA (AER p 37 & 124.) One of the television reporters broadcasting the Parade, Mr. Dennis Morgigno, looked down to Plaintiff and said, "crazy man" (AER p124.) Several minutes after this, two San Diego Police Officers came behind Plaintiff. These officers were Eduardo Lopez and David Valdez. Each officer grabbed one of Plaintiff's arms, pinning Plaintiff's arms. This was very painful to Plaintiff. The first words spoken by these officers were, "don't struggle." The two officers immediately pulled Plaintiff backwards. Plaintiff began to yell, "Freedom of speech." The two officers dragged Plaintiff through bushes into a grass area. They continued to have Plaintiff's arms pinned. In this grass area behind bushes, one of the officers violently grabbed the sign Plaintiff was carrying and jerked it out. It was painful, hurt and there was blood. The officers also broke his sign in half (AER p 37 &125). The officers handcuffed Plaintiff and placed him in the backseat of the police car and told him he was under arrest. The officers then used sanitizer to clean blood on their hands. While Plaintiff was handcuffed in the

backseat of the police car, Cesena arrived at the police car. Plaintiff said to officers that the handcuffs were too tight and he had a fistula for dialysis on his left wrist. Plaintiff asked officers to loosen the handcuffs. Plaintiff said if there were something wrong with his fistula, he would sue the officers (AER p 37.) The officers laughed at this and said that was the way they were supposed to do. Then they closed all police car's windows (AER p 38 & 125.) After about one hour in the car, under the sun, Plaintiff felt as though he could not breathe. Plaintiff yelled out, "I can't breathe." But there was no response from the officers (AER p 38 & 126.) Plaintiff used his leg to kick the car door. Sergeant Jesus Cesena came, opened the door and asked, "What?" Plaintiff told Cesena, "I can't breathe." Cesena lowered car windows and said, "If you kick my car one more time, I will lock your legs like a pig. Like a pig. Got it?" (AER. p 38) About 11:00 am, clinician Kathryn Alban came with police officer Michael Moran. Plaintiff asked Alban to loosen the handcuff because he had a fistula. Alban checked Plaintiff's arms and asked Moran to switch handcuffs and loosen it. Moran took Plaintiff to another car and placed him in the backseat (AER p 38.) There, Alban started a psychiatric evaluation. Alban asked Plaintiff why he had been protesting CIA at the parade, and what he had eaten for breakfast. While being questioned by Alban, Plaintiff came to believe that she thought Plaintiff was a bad person because he threatened people at the parade and used obscenities words to women and children. Plaintiff begged Alban and Moran to release him. Plaintiff promised that he would leave the parade immediately to come back to his music band to practice for the upcoming Valentine's Day show. Plaintiff also stated that he was the leader of the band. Alban never asked about Plaintiff's band or who its members might be. Alban and Moran drove Plaintiff to the Scripps Mercy hospital. Alban explained to Plaintiff that she took him to hospital to take care of his bleeding finger and would release him after that. However, nobody ever take care of his bleeding finger (AER p 38 & 126.) In the emergency room, Alban told medical staffs that Plaintiff was threatening people at the parade and yelling obscenities [sic] at women and children. While in the emergency room, Plaintiff was able to call his band members. One band member stayed in his car, another band member came to the emergency room to pick up Plaintiff's car keys to move Plaintiff's car back to the band. Although Alban was there when they came, she did not speak with the band member about Plaintiff. From the emergency room, Plaintiff was taken by Moran, Alban, and a medical staff to the psychiatric ward of the hospital (AER p 127) There were approximately twenty people in the Ward, all of whom were wearing hospital gowns and seemed to be wandering about aimlessly (AER p 127). Plaintiff was supposed to be kept involuntarily at the psychiatric Ward for 72 hours under Section 5150, but after two days Psychiatrist Yashwant Chaudhri of the Scripps Mercy hospital released him from the hospital (AER p 38 & 127; ARB p 2)

Plaintiff was terrified at being in the psychiatric ward for two days. From then Plaintiff never get out of his car to protest anymore (AER. page 38.)

# ARGUMENT

The US District Court of Southern California's decision was wrong.

**Error 1: The Court erred in allowing Defendants' Qualified Immunity. Why?**
First of all, the police officers Eduardo Lopez's and David Valdez's conduct amounted to a constitutional violation: First Amendment, Freedom of Speech and Fourth Amendment, arrest without probable cause. Officers Lopez and Valdez arrested the Plaintiff while he was expressing his beliefs about CIA (Statement of Facts, paragraphs 9-15). It's a protested speech (Statement of Facts, paragraph 5). They arrested the Plaintiff just because their supervisor Sergeant Jesus Cesena told them to do so. They did not have any probable causes for their arrest. Plaintiff did not pose an immediate threat of serious bodily harm to anybody. Plaintiff had not committed or was not committing a crime at all. See Ellis v. Wynalda, 999 F.2d 243 (Seventh Circuit 1993).

Second, the right violated was clearly established at the time of violation. Police officers arrested the Plaintiff quickly right after the Live TV broadcast reporter Dennis Morgino called ELITE security to get rid of the Plaintiff from his TV station stand, so that the Plaintiff's protesting voice could not get in the live TV show on San Diego Channel 4 (Statement of Facts, paragraph 8). ELITE security then called Sergeant Jesus Cesena – police supervisor at the parade – to get rid of Plaintiff. Finally, Sergeant Cesena ordered officers Lopez and Valdez to arrest the Plaintiff and to take him out of the TV stand (ARB p 2; ARB page 2).

It's easy to understand that TV reporter Dennis Morgino, ELITE security and policemen were in an "emergency" situation. They did not want San Diegans who were watching TV at home heard Plaintiff's protesting speech. They had to get rid of the Plaintiff from the TV station as soon as possible. Officers Lopez and Valdez knew that by arresting the Plaintiff, they violated the constitutional rights, but they had no choice. They had to follow their supervisor's order.

**That's the main reason why Policemen had arrested the Plaintiff before they checked the Plaintiff background.**

As in Transcript Day 1, from page 76, from line 11 to line 24:

> *MR. REXRODE (Plaintiff's Council) examined Officer David Valdez (Defendant):*
> *"Q. ...So you would have called for the records check before the PERT unit arrived?*
> *A. Yes*

*Q. Why did you - - why did you run the criminal history run?*
*A. You know, it is normal procedure....*
*Q. Okay. Well, you requested that information, what, 20 minutes or so*
*after you encountered Mr. Nguyen?*
*A. About 20 minutes, yes.*
*Q. MR. REXRODE: Nothing further. Thank you.*
*THE COURT: Thank you."*

After the Plaintiff had been arrested, Policemen and PERT unit fabricated evidence to cover up their wrong conducts, for examples:

*"Code Section and Description: 5150/MENTALLY ILL"* and *"I was advised by Officer Valdez #6562 and Officer E. Lopez #6654 that they detained Nguyen after he disrupted the Holiday Bowl parade by carrying a picket sign and yelling obscenities at women and children. Nguyen was already handcuffed and sitting in a patrol car"* – San Diego Regional Officer's Report Narrative (AER p 155 & 156). That was the original fabricated reason why they arrested the Plaintiff, which had written in San Diego Regional Officer's Report Narrative.

As policemen libeled and slandered Plaintiff as a mental ill person, they damaged Plaintiff's reputation (Defamation).

<u>Mental illness person?</u>

Plaintiff had been added into UNOS kidney transplant waiting list on 8/13/2012 and got a kidney transplant on 6/14/2015 at Scripps Green hospital, La Jolla, California. Mental ill people are never allowed to have kidney transplant.

In 2010, Plaintiff was the leader of the Autumn Drift band in San Diego. Plaintiff was a Touch Screen Inspector for San Diego Registrar of Voters. Plaintiff was the inventor of 3JCN Music Notation. Plaintiff had two master's degrees in computer science and physics. Plaintiff with these highly skills was treated as a mental ill person and had been arrested and put in a psychiatric ward by San Diego policemen. Does that make sense? Police can claim anybody is mental illness, if he/she protests against CIA. Scripps Mercy Psychiatrist Yashwant Chaudhri released Plaintiff after 2 days instead of 3 days as Clinician Kathryn Alban wanted (ARB p 2). This fact proves that police and Alban slandered Plaintiff as "mental ill" to cover up their wrong conducts.

<u>Yelling obscenities at women and children or shouting obscenities, profanity?</u>
(AER p 32:21, p 229:15, p 232:12 & 19-20)

Here is an excerpt from the letter of Mr. Carl Yee – a parade watcher on the incident day:

*"I witnessed this man waving his sign and intermittently yelling about the CIA being evil, but at no time did I hear him utter any obscenities."* (AER p 151)

Later Policemen fabricated more evidence:

"*I could see he had a very, very violent, agitated facial expression. He was sweating, and it wasn't a hot day, and there was - - there was spit coming out of his mouth.*", "*He is angry, he is yelling, he is screaming profanity, there is kids around.*", "*He was yelling 'Fuck the CIA'* ", "*I think it would cause a reaction of wanting to stop this person from using that type of language*", "*As a parent of five children under eight, I wouldn't want them to be exposed to profanity in such a manner. It is not the proper context, and his violent tendencies, his stick pointed at one end, in totality, it just seemed like a bad scenario and a bad incident waiting to happen.*" – Those are excerpts from Officer Lopez's testimony (page 47 to page 69), transcript of Bench Trial, day 1. Officer Lopez told these statements to his council to explain why he arrested the Plaintiff.

"*You were threatening people in the downtown area watching the parade, making verbal threats and you have no plan for yourself care at this time.*" – Involuntary Patient Advisement, Scripps Mercy Hospital San Diego (AER p 153)

It's easy to know that Policemen lied about the Plaintiff by calling Mr. Carl Yee - a parade watcher. He is living in San Diego. He was with his children at the parade, near by the TV station (10 or 15 feet). He sworn under the penalty and perjury that police lied to arrest the Plaintiff.

And this is an excerpt from "**Tuan's Truth**" story on San Diego City Beat Magazine, published on Wednesday 18 May 2011: "*We were about 10 or 15 feet from him the whole time and he was fairly loud and definitely distracting,*" the citizen says, adding that Nguyen "*definitely did not*" curse or threaten anyone." The police need to be honest, as well. Even though I don't particularly care for this guy, it's kind of disturbing from a [civil-rights] perspective." (AER p 147)

**Error 2:** **The Court erred in finding that no constitutional rights were violated. Why?**

**First**, the Plaintiff's speech and act were constitutional protected: First Amendment of United States Constitution. Police cannot arrest of individual engaged in free speech when there was no criminal conduct. See <u>George Packard, et. el; vs. The City of New York, case 1: 15-cv-07130</u>

At the parade, the Plaintiff was protesting the CIA. The Plaintiff was engaged in a peaceful protest, on a public street.

Police Officers Cesena, Lopez and Valdez prevented the Plaintiff from protesting. They did so by threatening the Plaintiff and forcibly removing him from a public street. All three police Officers did so while acting in an official capacity. See <u>Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009)</u>

Cesena, Lopez and Valdez's actions violated the Plaintiff's rights under the First Amendment to the United States Constitution. Acting in their official capacity, Cesena, Lopez and Valdez unlawfully prevented the Plaintiff from exercising his First Amendment rights.

They did so based on the content of the Plaintiff's protest ("CIA destroyed my life", "CIA is demon", "CIA is evil", "CIA is stupid because CIA trained Bin Laden"). Obviously, there is a causal connection between the retaliatory actions and the adverse effect on speech. Their actions thus violated 42 U.S.C. 1983. **Second**, Cesena, Lopez and Valdez arrested the Plaintiff without probable cause, in violation of his Fourth Amendment rights, the United States Constitution. An arrest made without probable cause violates the Fourth Amendment. See Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007). Probable cause to arrest exists "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect *had committed or was committing a crime.*" Id. (quotation marks omitted). In this case, Cesena, Lopez and Valdez did not have any facts and circumstances to believe that the Plaintiff had committed or was committing a crime. What they could do in their best is fabrication of faking evidence such as "He (the Plaintiff) yelled 'Fuck the CIA'", "He was threatening at the parade", "He was yelling obscenities [sick] at women and children", "His poster stick had a pointed end that can be used as a weapon" to cover up their actions. Their actions thus violated 42 U.S.C. 1983. **Third**, whether or not San Diego police violated Defamation? San Diego police (Jesus Cesena, Eduardo Lopez, David Valdez, Michael Moran, and clinician Kathryn Alban) arrested me in front of thousands of people watching the parade, then put me in a mental jail for 72 hours under Section 5150, claimed the Plaintiff as MENTALL ILLNESS in their police reports (AER p 155-165). These facts damaged the Plaintiff's background too much. He cannot find any jobs with a background such as "had been arrested and put in a mental jail by San Diego police". It's clearly they damaged the Plaintiff's reputation. They violated Defamation. The result is so severe: the Plaintiff no more can find a job; even he got two Masters' degrees in Computer Science and Physics. He has to live as people in the lowest society class. **Fourth**, whether or not San Diego police violated State Law Intentional False Arrest? Cesena, Lopez and Valdez arrested the Plaintiff so that his voice could not get in the live TV broadcast on San Diego Channel 4. They were all working for the San Diego Police Department. They detained the Plaintiff without sufficient causes and arrested him without probable cause. Their conducted caused the Plaintiff to be falsely arrested, that is, arrested without probable cause, in violation of California State Law. **Fifth**, whether or not San Diego police violated False Imprisonment? Clinician Alban and police officer Moran kept the Plaintiff in a mental jail for 72 hours under Section 5150 because Cesena, Lopez and Valdez told them to do that. They worried that the Plaintiff

might come back to protest at the TV station again if they did not keep him in the mental jail. They did it without any probable cause. It's clearly that they violated False Imprisonment. **Sixth**, whether or not San Diego police violated Intentional Fabrication of Evidence resulting in a loss of Liberty? Cesena, Lopez, Valdez, Moran, and Alban fabricated evidence that the Plaintiff was mental ill person, dangerous to the people, etc. to put him in jail. It's clearly that they violated Intentional Fabrication of Evidence resulting in loss of Liberty. **Seventh**, whether or not San Diego police violated Excessive Force and Police Brutality? Cesena squeezed the Plaintiff's arm and threatened him: "*I dare you to mess up the parade*" at the beginning of the parade. Lopez and Valdez used excessive force to grab the Plaintiff's arms in his back, pinned his arms, dragged him backwards on the ground through bushes to the grass area, ripped violently the poster stick out of his hands that bled, handcuffed his wrists tightly, did not loosen it when the Plaintiff asked them to do so, stuffed him in the patrol car, closed all doors so he had a difficulty of breathe. When the Plaintiff kicked the car door because he could not breathe, Cesena came and threatened him: "*If you kick my car one more time, I will lock your legs like a pig.*" Alban and Moran put the Plaintiff in a mental jail to live with about 20 mental ill patients for two days. That was cruel! Those facts proved that San Diego police violated Excessive Force and Police Brutality. **Eighth**, whether or not San Diego police violated Negligence and Battery? Cesena, Lopez, Valdez, Alban, and the San Diego Police Department, through their actions in the Statement of Facts and Argument above, negligently caused the Plaintiff to be physically injured and incarcerated. They owed a duty to act reasonably with the Plaintiff. They breached that duty and proximately caused him to be injured, in violation of California Government Code section 820 and California Common Law. They conducted unwanted and unjustified touching the Plaintiff, in violation of California Government Code section 820 and California Common Law. Additionally, when claims of "negligence and battery flow from the same facts as the alleged Fourth Amendment violation for excessive force [they] are measured by the same reasonableness standard of the Fourth Amendment." See *Atkinson v. County of Tulare*, 790 F.Supp2d 1188, 1211 (E. Dist. Cal. 2011) (citing *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-73 (Cal. App. 4th Dist. 1998)). **Ninth,** why San Diego Police Department, Sergeant Jesus Cesena, Clinician Kathryn Alban, and police Michael Moran were not included in the Defendant List? In the final Bench Trial dates, there were only two police officers Lopez and

Valdez remained in the Defendants' List. This shows that the US District Court of Southern California covered up the San Diego Police Department. One of three most important Defendants is Sergeant Jesus Cesena – the police supervisor at the parade. He threatened Plaintiff at the beginning of the parade: "*I dare you to mess up the parade*" (AER page 37:2). He ordered officers Lopez and Valdez to arrest the Plaintiff. He threatened Plaintiff when Plaintiff was in the back of police patrol car: "*If you kick my car one more time, I will lock your legs like a pig.*" (AER page 38:6-7). He ordered Lopez and Valdez to call PERT (AER p 233:10-11). Jesus Cesena must be in Defendants' list. Second is Clinician Kathryn Alban – PERT unit – who decided to put the Plaintiff in the mental jail (AER page 225:4, page 233:24-26, p 236:27, p 2371-2, p 240:14-17.) She believed in Lopez's and Valdez's words: "*A. I remember one of the officers telling me that Mr. Nguyen was making verbal threats to women and children that were preventing him from displaying his signs as he moved about the parade or in the area of the parade. Q. Do you recall whether or not the officers said Mr. Nguyen was using obscenities or not? A. Yes. Verbal threats and obscenities, yes, cursing, yes.*" (AER p 214:13-21)

Alban used those claims when she filled out the 5150 order at Scripps Mercy Hospital Emergency (AER p 153). There was nobody else, except Officers Lopez and Valdez, complained with Alban about Plaintiff:

"   *Q. While you were talking to Mr. Nguyen, did anybody else come up to you?*
    *A. I do not recall nobody else.*
    *Q. And did you talk to anybody who was a witness to the parade or Mr. Nguyen?*
    *A. Only the two officers.*" (AER page 224:4-9)

Kathryn Alban must be in Defendants' list. Third is the San Diego Police Department. All of Officers Cesena, Lopez, Valdez, Moran, and Clinician Alban worked for SDPD at the time. SDPD must be a Defendant.

Not only that, but also the fact that the Plaintiff did not have a Jury Trial or any witnesses in the Bench Trial dates proved that SDPD, City of San Diego and the US District Court of Southern California set up the court in that way to easily change the outcome of the case.

## Error 3 – Argument: Responding to Appellees' Response Brief

In "STATEMENT OF THE CASE" of Appellees' Response Brief (**ARB**), Appellees' council wrote: "*On the day of the Big Balloon Parade, Nguyen placed himself inside a fenced off secured area reserved for Cox Communications (Cox)*

*employees and their families. ER 003:16-17*". That is a lying statement from John
Turner (Cox). Plaintiff never protested inside a secured fence.

Dear Judges, again please call Mr. Carl Yee at **619- 521-0864** to verify about
Appellees' claims such as Nguyen placed himself inside a secured area, Nguyen's
yelling obscenities at women and children, yelling profanities (AER 004:5 & 27-
28), pacing and waving protesting sign in a menacing manner, swinging his sign at
the Officers, or the parade watchers fearful reaction to Nguyen's behaviors; and the
fact that the Elite security detail was unable to control Nguyen's actions before the
Officers arrived (ARB p 7). Mr. Carl Yee was a parade watcher on the incident
day. He and his children were about 10-15 feet away from Plaintiff all the time
(AER p 147.) He can testify many important things such as how policemen
arrested Plaintiff, did policemen talk to Plaintiff before dragging him away the TV
station, did Plaintiff threaten anybody, etc.

In "ARGUMENT" of ARB, part B, Appellees' council wrote: "*THE DISTRICT
COURT'S FINDING THAT THE OFFICERS HAD PROBABLE CAUSE TO
DETAIN NGUYEN WAS NOT IN ERROR.*

*Under section 5150, an officer may detain any person the officer determines, "as a
result of mental disorder, is a danger to others, or to himself or herself, or gravely
disabled...*

*Here, the District Court concluded after hearing all evidence, and drawing
rational inferences from those facts, Officers Lopez and Valdez were justified in
their suspicion that Nguyen could be suffering from a mental disorder rendering
him a danger to himself and others. ER 009:18-20. At trial, the Officers provided
specific, articulable facts to justify their suspicion, such as Nguyen (1) yelling at
such a loud volume Nguyen could be heard over the parade crowd; (2) pacing and
waiving his sign in a menacing manner; (3) swing his sign at the Officers; (4)
staring blankly at the Officers as if Nguyen did not recognize their presence; (5)
the parade watchers fearful reaction to Nguyen's behavior; and the fact that the
Elite Security detail was unable to control Nguyen's actions before the Officers
arrived. ER 010:11.*"

Those claims are lying. Please call Mr. Carl Yee at 619- 521-0864 to verify those
claims.

In "ARGUMENT" of ARB, part C and part D (page 8 & 9), Appellees' council
wrote that: "*THE DISTRICT COURT DID NOT ERR WHEN IT FOUND THE
OFFICERS USED REASONABLE FORCE DURING THE COURSE OF THEIR
INTERACTION WITH NGUYEN... In this instance, the District Court found the
Officers were primarily concerned with whether the 6 foot long stake Nguyen was
wielding in a crowd of parade goers could be used as a weapon. ER 011:19-28.
The evidence demonstrated Nguyen swung his sign at the Officers to keep them*

*from taking it away. ER 012:1-2. The Officers had to prey it out if his hands causing a minor cut on Nguyen's hand.*"

Plaintiff had protested 8 months (from April 2010 to December 2010) around San Diego county and downtown big events with the same poster and the same protesting speech before the incident day. Why San Diego policemen did not concerned with whether the 6 foot long stake could be used as a weapon then? **On the incident day, Officers Lopez and Valdez came from behind Plaintiff, suddenly grabbed his arms and dragged him backwards like a garbage bag for 50 feet, ripped a sign from his hands, caused a cut on his hand that bled and was very painful** (Appellees' ER 128:9-20). These were not reasonable force during the course of their interaction with Plaintiff. By their actions, Lopez and Valdez violated Plaintiff's rights under the Fourth Amendment to the US Constitution to be free from the use of excessive force. Their action violated 42 U.S.C. § 1983.

Lopez and Valdez lied that they had warned Plaintiff that profanity was inappropriate and that he was obstructing the path of pedestrians before they arrested Plaintiff (AER page 229:14-28 & page 232:19-27). This is just one example to show Defendants lie too much about the case.

On ARB page 9, Appellees' council wrote: "*THE DISTRICT COURT WAS CORRECT TO CONCLUDE THE OFFICERS DID NOT VIOLATE NGUYEN'S FIRST AMENDMENT. Under the First Amendment a citizen has the right to be free from governmental action taken in retaliation for exercise of their First Amendment rights...To prevail on a First Amendment retaliation claim, however, Nguyen was required to show (1) he was engaged in political speech or other protected activity; (2) the actions taken by the Officers towards him would 'chill or silence a person of ordinary firmness from future First Amendment activities;' and (3) that deterrence of Nguyen's speech was a substantial or motivating factor for the Officers' conduct toward Nguyen.*"

Plaintiff talked about "*CIA is evil. CIA destroyed my life. CIA is stupid. CIA trained Bin Laden.*" (AER p 32:25, p 213:22-23, p 232:14) So Plaintiff did engage in political speech. After Plaintiff had been arrested and had been kept in the psychiatric ward for two days. Plaintiff has never come out of his van to protest CIA anymore (AER p 145). It is clearly that the actions taken by Lopez, Valdez, Alban, and Moran silence Plaintiff from future First Amendment activities. Plaintiff's protesting speech against CIA under a live TV show was a motivating main factor for policemen to arrest him. Therefore, Plaintiff did prevail on a First Amendment claim.

In summary, this case is not a complicated case to understand or to make the correct final judgment. San Diego Police Department did not like the fact that the Plaintiff living in his van and protesting CIA every day in San Diego downtown

and around the county in 2010. They had warned the Plaintiff on December 1st, 2010 by parking a jeep right behind the Plaintiff's van at 101 W. Broadway, downtown. The jeep's license plate was "SAMIAMR" – means "I AM MR. SAM" and a pair of handcuffs was hung in its front mirror (AER p 149) Police supervisor at the parade Sergeant Jesus Cesena also had warned the Plaintiff at the beginning of the parade: "*I dare you to mess up the parade*". What SDPD was waiting is a "chance" to arrest the Plaintiff. That chance came when the TV reporter of San Diego Channel 4, Dennis Morgigno, called the San Diego ELITE security company to get rid of the Plaintiff – a *crazy man*", as he called the Plaintiff – from his live TV broadcast station, so that the Plaintiff's protesting CIA voice could not get in his broadcast. ELITE security called Sergeant Jesus Cesena for help. Cesena ordered officers Lopez and Valdez to arrest the Plaintiff immediately. After that they'd called PERT unit to keep the Plaintiff in a mental jail for 72 hours under section 5150. Then they fabricated evidence in their police reports and in their court papers to cover up the truth.

Although the case is simple, however, the City of San Diego teamed up with the US District Court of Southern California to cover up SDPD.

## CONCLUSION

The Court erred (on purpose) in allowing Defendants' Qualified Immunity and in finding that no constitutional rights were violated. The Court erred in entering judgment in favor Defendants and against Plaintiff Thomas Nguyen as to all claims in the complaint.

For the reasons stated above, the United States Court of Appeals for the Ninth Circuit should reverse the US Court of Southern California's decision to protect Justice.

Dear Judges, Defendants and their council lied too much about the case. They are bad people. I swear under penalty of perjury that all the information contained in this document is true and correct. I'd really appreciate it if you could put Defendants and me under polygraph (lie detector) test.

## SIGNATURE

Respectfully submitted at San Diego, California on May 12, 2016,

*Thomas Nguyen*

Thomas Nguyen, Pro se Appellant

# LIST OF AUTHORITIES

**Cases:**
*Ellis v. Wynalda*, 999 F.2d 243 No. 92-3035 (Seventh Circuit 1993)..............5

*George Packard*, et. el; vs. The City of New York, case 1: 15-cv-07130............7

*Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009)......7

*Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).....................8

*Atkinson v. County of Tulare*, 790 F.Supp2d 1188, 1211 (E. Dist. Cal. 2011) (citing *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-73 (Cal. App. 4th Dist. 1998))...............................................................................................9

# CERTIFICATE OF COMPLIANCE

Pursuant to rule 8.204(c) of the California Rules of Court, I hereby certify that this brief contains 5,540 words, including footnotes. In making this certification, I have relied on the word count of the computer program Microsoft Office Word used to prepare the reply brief.

By *Thomas Nguyen*
(Signature)

# LIST OF EXHIBITS

A. Mr. Carl Yee's letter (updated.)
Mr. Yee was a parade watcher on Thursday 30 December 2010 (the incident day). He is willing to testify in court or via phone 619-521-0864. His letter had been turned in to the US District Court of Southern California in 2011 as an Exhibit (AER page 151).

# CERTIFICATE OF SERVICE

I certify that on the following date: May 12, 2016. I provided a copy of this reply brief to the opposing party's attorney Carmen A. Brock by hand delivery.

Signature: *Thomas Nguyen*
Thomas Nguyen, Pro se Appellant

CIVIL DIVISION

16 MAY 12 PH 12: 52

CITY ATTORNEY

Ninth Circuit Appeal Case Number: 15-56996

# EXHIBIT A

To whom it may concern:

In San Diego CityBeat there was a story dated 4-26-2011 entitled "TUAN'S PARADOXES".   Below is an excerpt from that story:

> "…The last time you would've seen Nguyen protesting in person would have been Dec. 30.
>
> Big Brother finally came to silence him during the Big Bay Balloon Parade.
>
> According to a San Diego Police report, officers detained Nguyen after he "disrupted the Holiday bowl parade by carrying a picket sign and yelling obsenities [sic] at women and children…""

I witnessed this man waving his sign and intermittently yelling about the CIA being evil, but at no time did I hear him utter any obscenities.

My memory on this point is very clear because I had brought my two young children to the parade.  We were watching from near the electrical box across from the grandstand, very close to the man identified as Tuan Nguyen in the article.  When I am in public with my children I am very aware when foul language is used around us and say something like "Hey, watch your language!" when I hear it.  My children and I did not hear any such language from Mr. Nguyen.

After I read the story in CityBeat I called the author, Dave Maas, and told him how what I had witnessed differed from what he wrote that the police report contained.  Then on September 26, 2011 I received a call from Mr. Nguyen who had gotten my phone number from Mr. Maas.  I told Mr. Nguyen I would write this "to whom it may concern" letter about what I recalled from the balloon parade.  As of this letter I have never met Mr. Nguyen.

Sincerely,

*Carl Yee* 9-28-2011

Carl Yee

619-521-0864

*I swear the above letter is true to the best of my knowledge and am willing to testify if necessary.*

*Carl Yee 1-12-2016*

*619-521-0864*